**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT NASHVILLE**

**MARCH SESSION, 1999**



FILED

April 22, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 01C01-9712-CR-00584** |
| | ) | |
| Appellant, | ) | |
| | ) | |
| | ) | **DAVIDSON COUNTY** |
| **VS.** | ) | |
| | ) | **HON. FRANK G. CLEMENT, JR.,** |
| **DREW V. SAUNDERS,** | ) | **JUDGE** |
| | ) | |
| Appellee. | ) | (Dismissal of Indictment) |

**ON APPEAL FROM THE JUDGMENT OF THE**
**CRIMINAL COURT OF DAVIDSON COUNTY**

<u>FOR THE APPELLEE</u>:

LIONEL R. BARRETT, JR.
Washington Square Two
Suite 418
222 Second Avenue, North
Nashville, TN 37201

<u>FOR THE APPELLANT</u>:

JOHN KNOX WALKUP
Attorney General and Reporter

DARYL J. BRAND
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

VICTOR S. JOHNSON
District Attorney General

GEORGE R. BONDS
Assistant District Attorney General
Washington Square, Suite 500
222 Second Avenue, North
Nashville, TN 37201

OPINION FILED _____

REVERSED; REMANDED.

DAVID H. WELLES, JUDGE

# OPINION

The State of Tennessee appeals the trial court's dismissal of an indictment for DUI against Defendant, Drew V. Saunders. Defendant urges this Court to affirm the dismissal, arguing that the State exhibited prosecutorial vindictiveness in violation of his right to due process. The State, however, denies vindictiveness, contending that the actions taken by the assistant district attorney constituted part of the natural plea bargaining process. Furthermore, the State argues that the trial court improperly dismissed the indictment based upon the court's perception of a lack of sufficient evidence to support the indicted charge of DUI.

## I. FACTS

The record reflects that Park Ranger E.J. Kirby attempted to stop Defendant after observing him drive around a barricade blocking entrance to Centennial Park at 2:00 a.m. on September 27, 1996, a time when the park was closed to visitors. By affidavit appended to the State's motion to reconsider, Kirby attested that Defendant initially stopped and then drove away. Kirby effected another stop, at which time the ranger discovered that Defendant smelled of alcohol, his eyes were bloodshot, and his speech was slurred.

Defendant reported to Kirby that he had consumed seven or eight drinks in the previous hour, around 1:30 a.m. He reported to Kirby that he had attempted to drive through Centennial Park because, in Kirby's words, "he knew he had had too much to drink and was afraid of being stopped by police if he

drove on West End Avenue." Kirby administered the horizontal gaze nystagmus test, and on the basis of his findings, requested a DUI unit to perform breath-alcohol testing on Defendant. The dispatcher reported back that no DUI units were available that night.

Ranger Kirby attested that because he could not leave his post at Centennial Park that night to take Defendant downtown, he issued Defendant a misdemeanor citation for reckless driving by intoxication. In addition, he required Defendant to call a friend to drive him home. When this driver arrived, Kirby ensured that the driver was licensed and not intoxicated.

Defendant was indicted by the Davidson County Grand Jury for one count of reckless driving and one count of DUI. On August 28, 1997, Defendant moved the trial court to dismiss the count of the indictment charging DUI on the basis of prosecutorial vindictiveness. Following an evidentiary hearing, the trial court dismissed the charge of DUI, stating that "upon recommendation of the Attorney General, it is ordered by the Court that Count two of this cause be . . . dismissed."[1]

At the evidentiary hearing on Defendant's motion to dismiss the indictment, the defense presented testimony by Anthony Adgent, Defendant's counsel during the plea negotiations. Adgent testified that during negotiations with the assistant district attorney, General Bret Gunn agreed to accept a plea of guilty to reckless driving, so long as Defendant agreed to perform forty hours of community service

---

[1] It is clear from the record and from the brief filed by the State that the State did not recommend, but instead "vigorous[ly] oppos[ed]," dismissal of this count.

in addition to other requirements. Defendant informed Attorney Adgent that he could not perform the public service and therefore could not accept the plea offer. According to Adgent, when he told General Gunn that Defendant could not accept the terms of the plea offer and would request a preliminary hearing, Gunn "became somewhat agitated and pointed his finger in [Adgent's] face and said, unless your client pleads guilty to reckless driving today and if you have a preliminary hearing I'll []indict him for D.U.I."

## II. ANALYSIS

### A.

This case is governed in part by Bordenkircher v. Hayes, 434 U.S. 357 (1978), in which the United States Supreme Court held that "the course of conduct engaged in by the prosecutor . . . which no more than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution, did not violate the Due Process Clause of the Fourteenth Amendment." Id. at 365. The Court further stated, "In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." Id. at 364.

Likewise, in United States v. Goodwin, 457 U.S. 368 (1982), the defendant, after having rejected a plea offer and invoking his right to a jury trial, was indicted on more serious charges arising from the same incident. Id. at 370-71. The Goodwin Court explained the Bordenkircher outcome as follows:

> An initial indictment—from which the prosecutor embarks on a course of plea negotiation—does not necessarily define the extent of the legitimate interest in prosecution. For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded.

Id. at 380.

In Goodwin, the Court reversed a decision by the Court of Appeals for the Fourth Circuit which adopted a presumption of vindictiveness because the circumstances at issue in that case "gave rise to a genuine risk of retaliation." Id. at 372. In so holding, the Supreme Court stated that "a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision." Id. at 381. Thus, "[a] prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution." Id. at 382. Finally, the Court also noted, "This Court in Bordenkircher made clear that the mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified." Id. at 382-83.

Our supreme court spoke on the issue of prosecutorial vindictiveness in State v. Phipps, 959 S.W.2d 538 (Tenn. 1997), a case in which the State sought the death penalty upon the retrial of charges for which the defendant had previously been sentenced to life imprisonment. Factually, Phipps is quite distinct from the case at bar, yet its rationale is instructive. In Phipps, the court held that "a rebuttable presumption of prosecutorial vindictiveness may arise if

the circumstances of a case pose a 'realistic likelihood' of prosecutorial retaliation." Id. at 546. Furthermore,

> In assessing whether a 'realistic likelihood' of prosecutorial retaliation exists, courts must consider whether the right asserted by the defendant would result in duplicative expenditures of prosecutorial resources, or require the State to do over again what it thought it had already done correctly once. . . . When the circumstances demonstrate that the prosecutor has 'a personal stake' or an interest in self vindication, or when institutional biases militate against retrial of a decided question, the balance weighs in favor of recognizing the presumption. . . . Likewise, the presumption is especially warranted if the prosecutorial decision to increase the charge or sentence is made after an initial trial is completed rather than in a pretrial context.

Id. (citing Goodwin, 457 U.S. at 383). From the instructions of the United States Supreme Court and the Tennessee Supreme Court, we find no basis for presuming prosecutorial vindictiveness in the pretrial setting of this case.

## B.

Absent a presumption of vindictiveness, we next review the trial court's decision to dismiss Defendant's indictment for DUI based upon actual vindictiveness. Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact, not this Court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). In this case, the trial court found,

> The evidence before me is that there was a not necessarily unusual give and take between the . . . assistant district attorney general in [general sessions] court and the attorney for the defendant. There's nothing wrong at all with a person stating their [sic] position clearly, nothing wrong with raising voices though I prefer a different approach myself. But there is absolutely nothing wrong with that and there's nothing wrong . . . that if they believe based upon the facts and circumstances of that case that the State is justified in saying if you don't accept this offer we will seek more severe charges.

We conclude that the evidence does not preponderate against this finding by the trial court.

Defendant, through counsel, argued at the hearing on his motion to dismiss that

> if the State . . . had heard the preliminary hearing and had said, you know, this really . . . should have been a D.U.I. I'm going to indict it as a D.U.I. it would be perfectly within his right to do that but I think that since it's unrefuted that he said have a preliminary hearing and we'll have you indicted for D.U.I., I think that under this set of facts, that this is a rare case, that this motion for prosecutorial vindictiveness is established.

The law as established by Bordenkircher, as illuminated by Goodwin, and as recognized by the trial court is clearly counter to Defendant's argument.

### C.

Although the trial court found no impropriety in the State's conduct during plea negotiations with Defendant, the judge nevertheless granted Defendant's motion to dismiss the indictment, stating,

> The problem in this case is there is absolutely no evidence whatsoever before me today to justify a D.U.I. charge. Nothing. Zero. Zip. The proof suggests that the driver, the defendant, drove around a barrier. The proof before me that I have heard says that no one saw him drive erratically. No one saw him weaving. No one saw him speeding. As a matter of fact, the evidence that I've heard affirmatively says he was not speeding, on and on and on.
> Obviously, if the matter went to trial there might be other evidence but I haven't heard any and I have to make a decision on what I heard today.

We conclude that the trial judge's ruling was erroneous. Defendant cannot, by moving to dismiss the indictment, force the trial court to conduct a "mini-trial" in which the State must present its proof on the merits of the charge of DUI or be

cut short in its attempt to prosecute. As the United States Supreme Court stated in Costello v. United States, 350 U.S. 359 (1956),

> If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial . . . .

Id. at 363. For this reason, "[a]n indictment . . . , if valid on its face, is enough to call for trial of the charge on the merits." Id.; see United States v. Calandra, 414 U.S. 338, 345 (1974); State v. Gonzales, 638 S.W.2d 841, 845 (Tenn. Crim. App. 1982) (holding that "indictments are not open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury to support it").

For the foregoing reasons, we conclude that the trial court erred by dismissing Defendant's DUI indictment. The dismissal is therefore reversed, and this case is remanded to the trial court for further proceedings.

_____
DAVID H. WELLES, JUDGE

CONCUR:

_____
JOE G. RILEY, JUDGE


_____
JOHN EVERETT WILLIAMS, JUDGE